IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED TRANSPORTATION UNION
and JANIS K. GUNTER,

                Petitioners,

v.                                           Civ. No.  03-1350 JH/RLP

NATIONAL RAILROAD PASSENGER
CORPORATION (AMTRAK),

                Respondent.

## MEMORANDUM OPINION AND ORDER

This case presents the attempt by a railroad employee covered by both the Railway Labor Act and a collective bargaining agreement to enforce an arbitration finding in her favor after she was terminated by her employer.  The case is presently before the Court on the parties' cross motions for summary judgment: *Petitioner's Motion for Summary Judgment* [Doc. No. 12], and *Amtrak's Motion for Summary Judgment* [Doc. No. 22].  The parties have stipulated that this case may be resolved on the cross motions.  *See* Doc. No. 9.  Because the Court finds that no genuine issue of material fact exists as to whether Public Law Board No. 6478 exceeded its jurisdiction or violated the Railway Labor Act by considering an issue allegedly not raised by the parties in informal negotiations "on the property", the  Court will deny Amtrak's motion for summary judgment and will grant Petitioner's motion for summary judgment, thereby affirming the arbitrators' award to Petitioner.

## STANDARD OF REVIEW

Railroad labor disputes stemming from employee grievances or regarding the interpretation of collective bargaining agreements are subject to binding arbitration under Section 3 of the Railway

Labor Act ("RLA"), 45 U.S.C. § 153.  Congress established the National Railroad Adjustment Board ("NRAB") to arbitrate such disputes.  *Id*. at § 153 First.  However, as an alternative to the NRAB, the parties may submit an arbitrable dispute to a public law board or to a special board of adjustment consisting of three members: one to represent the interests of the carrier, one to represent the interests of the employee or labor union, and a third neutral arbitrator appointed either by the parties or the National Mediation Board.  45 U.S.C. § 153 Second; *see also Brotherhood of Locomotive Engineers v. Denver Rio Grande & Western R.R. Co.*, 411 F.2d 1115, 1117 (10th Cir. 1969).  As observed by the Eighth Circuit Court of Appeals, "[t]he members appointed by the parties are theoretically arbitrators, but they advocate the position of the party that appointed them and virtually always cast their votes for their own sides, so that the neutral arbitrator ultimately decides the dispute."  *Brotherhood of Maintenance of Way Employees v. Terminal R.R. Ass'n of St. Louis*, 307 F.3d 737, 739 (8th Cir. 2002).  The jurisdiction of public law boards is defined by the agreement of the parties establishing it.  45 U.S.C. § 153 Second.

The RLA provides that any employee or carrier aggrieved by a decision of the NRAB, a public law board, or a special board of adjustment may file a petition for review of that decision with the federal district court.   The statute describes the process by which the court reviews the board's decision as follows:

> The Adjustment Board shall file in the court the record of the proceedings on which it based its action. The court shall have jurisdiction to affirm the order of the division, or to set it aside, in whole or in part, or it may remand the proceedings to the division for such further action as it may direct. On such review, the findings and order of the division shall be conclusive on the parties, except that the order of the division may be set aside, in whole or in part, or remanded to the division, for failure of the division to comply with the requirements of this chapter, for failure of the order to conform, or

> confine itself, to matters within the scope of the division's jurisdiction,
> or for fraud or corruption by a member of the division making the
> order.

45 U.S.C. § 153 First (q).  Thus, the district court's scope of review is limited.   As the Tenth Circuit

Court of Appeals has noted, "An adverse decision may be appealed to the federal district court on

only three grounds: '(1) failure of the Adjustment Board to comply with the requirements of the

Railway Labor Act; (2) failure of the Adjustment Board to conform, or confine itself to matters within

the scope of its jurisdiction; and (3) fraud or corruption.'"  *Robinson v. Union Pac. R.R*., 245 F.3d

1188, 1191-92 (10th Cir. 2001); *accord Watts. v. Union Pac. R.R. Co*., 796 F.2d 1240, 1243 (10th

Cir.1986). The Tenth Circuit has emphasized that this statutory standard of review "is among the

narrowest known to the law."  *Watts*, 796 F.2d at 1243 (quotation omitted).  This Court may not

consider the merits of the dispute or otherwise review the correctness of the PLB's decision; rather,

it may only determine if the PLB exceeded its jurisdiction, violated the RLA, or acted as a result of

fraud or corruption.

Here, Amtrak relies primarily upon the first and second bases for judicial review: the PLB's

alleged violation of the RLA and the PLB's alleged failure to confine itself to matters within its

jurisdiction.

## PROCEDURAL AND FACTUAL BACKGROUND

The material facts of this case are set forth herein, and except where otherwise noted, are

undisputed.

Petitioner Janis Gunter ("Gunter") is a member of Petitioner United Transportation Union

("UTU") as well as a former employee of Respondent National Railroad Passenger Corporation

3

("Amtrak"), a rail carrier subject to the RLA.  The UTU and Amtrak are parties to a collective bargaining agreement governing the rates of pay, hours of service, and working conditions applicable to Gunter, who worked as a Passenger Conductor.

On January 15, 2002, Amtrak instructed Gunter to attend a disciplinary hearing to be held on January 20, 2002 in connection with charges that she had violated Amtrak's safety rules while on the job in Albuquerque, New Mexico.  The January 20 hearing took place, and by letter dated February 1, 2002, the hearing officer notified Gunter that she had been found guilty of the charges of misconduct.  Along with the hearing officer's letter was a letter from Amtrak's General Manager, Brian Rosenwald, informing Gunter that on the basis of the hearing officer's decision and her past disciplinary record, the company was terminating her employment.  Mr. Rosenwald's letter imposing the penalty of termination bears a date of January 28, 2002—four days prior to the February 1, 2002 date on the hearing officer's decision letter.[1]

In accordance with the collective bargaining agreement, the UTU filed a grievance regarding Gunter's termination.  There is no evidence or any other indication in the record that the UTU argued at this stage, based upon the respective dates on the letters from the hearing officer and Mr. Rosenwald, that Amtrak had prejudged the case and made the decision to terminate Gunter before she was found guilty.[2]  Amtrak denied the grievance, and UTU appealed.

The appeal was handled on Amtrak's property in accordance with the expedited process to

---

[1] Amtrak contends that Mr. Rosenwald's letter was inadvertently misdated.  However, that question is beyond the scope of this Memorandum Opinion and Order.

[2] The parties cite to "Rule 25(a)", which provides that "employees will not have a reprimand noted on their discipline records nor be suspended or dismissed from the service without a fair and impartial trial."  Though the issue is not directly addressed, based upon the briefs the Court infers that Rule 25 is part of the parties' collective bargaining agreement.

which the parties had stipulated.  Specifically, UTU and Amtrak discussed the appeal of Gunter's grievance on February 28, 2002, during a monthly conference between the parties.  Lorraine McLaughlin, Amtrak's Labor Relations Officer, as well as UTU representatives Roger Lenfest and Gary Galvin, attended the conference.  Mr. Lenfest presented arguments on behalf of Gunter. According to Mr. Lenfest's affidavit, he argued at the conference that, based upon the dates of the hearing officer's findings and the carrier's discipline letter, Amtrak had violated the fair hearing requirement of the collective bargaining agreement.  Lenfest Aff. at ¶ 11.  In contrast, Amtrak presents Ms. McLaughlin's affidavit, in which she states that Mr. Lenfest never raised the issue at the conference.  McLaughlin Aff. at ¶ 3.  In support of her position, Ms. McLaughlin points to her handwritten notes from the conference, which contain reference to various arguments made by Mr. Lanfest but make no mention of a claim that Amtrak had improperly predetermined its disciplinary decision regarding Gunter.  *Id.* at ¶ 4; *see also* Ex. D to Amtrak's Memorandum in Support of Motion for Summary Judgment.  It does not appear that there was a transcript or a tape recording made of the conference, leaving us with only the testimony of the participants to indicate whether or not the issue was discussed.  Thus, a fact dispute exists as to whether or not the UTU raised the predetermination issue while still "on the property" of Amtrak.  On April 9, 2002, Amtrak's Director of Labor Relations, Larry Hriczak, notified the UTU that the appeal of Gunter's grievance had been denied.  Two days later, in accordance with the agreement of the parties, the UTU informed Amtrak that it wished Gunter's grievance to be added to the docket for adjudication by Public Law Board No. 6478 ("the PLB").

The PLB held its arbitration hearing on September 30, 2002.  Arbitrator William H. Robinson represented Amtrak, and arbitrator P. L. Patsouras represented the UTU.  The neutral arbitrator was

5

Marty E. Zusman.  In both its written submissions and in its oral presentation to the PLB, the UTU argued that Gunter's grievance should be sustained on procedural grounds because the letter notifying her of her termination predated the hearing officer's letter advising her that she had been found guilty. In response, Robinson argued during the hearing that it was improper for the UTU to raise or the PLB to consider this argument, contending that it had not been raised during the handling of the grievance on the carrier's property.

In the spring of 2003, neutral arbitrator Zusman provided the parties with the proposed award on Gunter's grievance.  In  that proposed award, Zusman wrote:

> The Board finds nothing in the on-property record related to the procedural issue submitted in the Organization's Ex Parte Submission and argued before this Board.  The Carrier therefore maintains that it is an improper issue, particularly under the expedited handling on this Board, where only a single letter is submitted.  This Board firmly holds that all issues must have been joined on the property or come too late for our consideration.  In the future, the Organization must expand its expedited process and raise the issue on property.

In other words, the neutral arbitrator seemed to find that (1) neither party raised the procedural, predetermination issue on the property, and (2) the PLB could not consider issues not raised on the property.  Despite those two statements, Zusman's proposed award goes on to sustain Gunter's grievance on the basis of the UTU's argument of improper procedure, to wit, predetermination.  The proposed award appears to acknowledge the problem stemming from the fact that the procedural issue was not raised on the  property, but then suggests that the issue is so obvious from the written record such that the PLB will overlook the UTU's omission in this single instance.  The proposed award states: "However, the Board notes that even a cursory look at this record would indicate that the dates are in contravention of the Agreement.  Carrier reviewed the dates....  The Board will not

view future handling in the same manner, as the parties must raise the issue on the property." Amtrak then requested an executive session of the PLB, where it again argued that it was improper for the PLB to consider the procedural argument. However, this proposed award was not the final word on the matter.

In the fall of 2003, neutral member Zusman issued a "Corrected Copy" of the award on Gunter's grievance, which was a modified version of the earlier proposed award. This final, corrected copy of the award omits most of the language quoted above, thereby eliminating the finding that the procedural issue was not raised on the property. Instead, it relies upon Rule 25 and the precedent banning prejudgment. The final award sustained Gunter's grievance on the procedural issue without consideration of the substantive merits and ordered that Amtrak reinstate Gunter and compensate her for time lost while out of service.

Amtrak refused to comply with the PLB's award, and instead on November 24, 2003, Gunter and the UTU filed their petition in this Court to enforce the award. Amtrak argues that by basing its decision on arguments that were not raised on the property, the PLB exceeded its jurisdiction and violated the RLA, rendering the award void and unenforceable. The UTU claims that it did raise the issue on the property, and that even if it did not, the PLB has the discretion to take notice of issues that are apparent from the record properly before it.

## DISCUSSION

## I.   ARBITRATOR'S JURISDICTION

Amtrak argues that by considering an issue or argument not raised on the property, the neutral arbitrator exceeded his jurisdiction. For purposes of clarity, the Court notes in reading the briefs that the parties appear to agree that the PLB may not consider new *evidence*, whether written or

testimonial, not brought forth while the dispute remained on the carrier's property. However, the parties diverge on the question of whether the PLB may consider new *arguments or issues* not raised before arbitration. The UTU contends that the neutral arbitrator is free to draw his own conclusions based upon the evidence before him, even if those conclusions are not grounded upon arguments made on the property. Thus, the UTU argues that Zusman was free to look at the record (most of which came from Amtrak itself and all of which was disclosed on the property) and draw his own conclusions regarding prejudgment based upon the dates plainly set forth on the January 28 and February 1, 2002 letters.[3] Thus, the UTU essentially argues that the PLB may make a dispositive ruling based upon a procedural argument not raised on the property, provided that procedural argument is based on documents that were raised on the property. In contrast, Amtrak contends that the UTU is prohibited from raising, and the neutral arbitrator from considering, any argument or issue not raised or discussed on the property, regardless of whether it is based upon new evidence.

In this case, both parties have provided the Court with a copy of the December 31, 2001 *Memorandum of Agreement Between the National Railroad Passenger Corporation and the United Transportation Union* ("Memorandum of Agreement"), which establishes the PLB and from which the PLB derives its authority. The Court notes that, if any other agreement (such as the applicable collective bargaining agreement or an arbitration agreement of some sort) or set of rules in any way governs the grievance, appeal, and arbitration process in this case, the parties have not provided it to the Court.

This fact is important because the jurisdiction of the arbitrator is determined by the agreement

---

[3] Of course, Zusman did not just "happen to notice" the dates on the letters. The UTU made the prejudgment argument in its written submissions to the PLB before the hearing.

of the parties: either the agreement establishing the arbitration board itself, an arbitration agreement, or in some cases, the collective bargaining agreement. *American Eagle Airlines, Inc. v. Air Line Pilots Ass'n Int'l*, 343 F.3d 401, 410 (5th Cir. 2003); *Airline Professionals Ass'n of Intern. Broth. of Teamsters, Local Union No. 1224, AFL-CIO v. ABX Air, Inc.*, 274 F.3d 1023, 1030 (6th Cir. 2001); *Armstrong Lodge No. 762 v. Union Pacific R.R.*, 783 F.2d 131, 135 (8th Cir. 1986). An award should be vacated if the arbitrator ignores the plain language of the agreement and exceeds his jurisdiction. *See Northwest Airlines, Inc. v. Int'l Ass'n of Machinists and Aerospace Workers, Air Transport Dist. Lodge No. 143*, 894 F.2d 998, 1000 (8th Cir. 1990). But the arbitrator has the power to interpret ambiguous language in contract provisions. *Id.*

In this case, Section G of the Memorandum of Agreement establishing the PLB states that ten days prior to the hearing, the parties must provide the neutral arbitrator with written briefs setting forth all facts, evidence, and arguments in support of their respective positions. The Memorandum of Agreement then provides that "[t]he Neutral Member shall have the authority to require the production of such additional evidence, either oral or written, including rebuttal briefs, as he may desire from the parties provided it pertains to the issue or issues presented in the submission." Thus, the Memorandum of Agreement permits the neutral arbitrator to compel the parties to provide him with additional evidence; however, the agreement does not by its express terms limit that additional evidence to items previously presented on the property.[4] Furthermore, nowhere does the Memorandum of Agreement provide that the issues presented in the parties' written submissions be issues that were previously raised on the property.

---

[4] Again, there may be an agreement between the parties that imposes such a limitation; if such an agreement exists, it has not been presented to the Court.

9

As explained above, an arbitrator exceeds his jurisdiction if he violates the plain, express terms of the agreement defining his authority; however, he retains authority to interpret ambiguous language.  Here, the Memorandum of Agreement is unclear as to whether the PLB may consider new evidence, and it is silent as to whether the PLB may consider new issues.  In this instance, assuming for the purposes of argument only, that the prejudgment issue was not raised on the property, Zusman had the authority to interpret the ambiguous Memorandum of Agreement to permit him to consider that argument.

The Court is fully aware of the strong public policy factors that weigh in favor of specifically requiring all parties to an arbitration to test their arguments on the property before bringing them to the board.  Such a system gives the parties a full and fair opportunity to weigh all opposing arguments and attempt to reach an amicable resolution before resorting to arbitration.  However, it is the parties who hold the power to craft the jurisdiction of the board that they created by agreement; their failure to draft an agreement to their satisfaction does not necessarily mean that the PLB exceeded its jurisdiction.  The Court is also cognizant of its limited power of review in this case, and Amtrak has failed to bring forward any agreement between the parties circumscribing the arbitrator's jurisdiction in this manner.  Instead, Amtrak cites to two cases[5] in which courts, applying the terms of the parties' specific agreements regarding the board's jurisdiction, concluded that the arbitrator's could not properly consider new matters not raised on the property.  But these cases are distinguishable because those courts were able to point to the terms of the parties' agreements which prohibited the arbitrators' conduct.  That is not the case here.

---

[5] *See Brotherhood of Maintenance of Way Employees and Wabash Federation v. Terminal Railroad Ass'n of St. Louis*, No. 4:00CV1623, slip op. at 14-15 (E.D. Mo. 2001) and *Williams v. Chichago and North Western Transportation Co.*, 715 F. Supp. 857 (N.D. Ill. 1989).

This case is similar to *Norfolk and Western Ry. Co. v. Transportation Communications Int'l Union*, 17 F.3d 696, 701 (4th Cir. 1994), which is persuasive.  In that case, the agreement creating the public law board conferred upon it the power to request additional evidence from the parties (much like the agreement in this case).  *Id*. at 700.  One party refused to provide such supplemental information, and the board drew a negative inference from that refusal.  *Id*. at 701.  On appeal, the refusing party argued that by drawing that negative inference, the board had exceeded its powers under the agreement.  *Id*. The Fourth Circuit disagreed, observing that the agreement did not address the powers of the board to draw inferences or to assign particular weights to evidence or its absence, nor did it address the powers of the board when a party refused to comply with its request for additional evidence.  *Id*.  In fact, much like the agreement in this case, the agreement in *Norfolk and Western* was completely silent as to how the board was to make its decisions.  In concluding that the board had not exceeded its jurisdiction, the court found that the board "merely assumed an evidentiary power that could reasonably be understood as implicit in the powers expressly conferred upon it by the parties. This assumption of an incidental power was well within the Board's discretion, as the parties had effectively ceded to the arbitrators the task of defining the scope of their power by providing in the contractual language little guidance to the arbitrators as to their powers." *Id*.  This case is much the same.  Amtrak has brought before the Court no agreement between the parties limiting the issues or arguments which the PLB might consider, particularly when those issues arise solely from documents that all parties agree were produced on the property.  There is simply no restraint on the scope of the arbitrators' power in this regard, and therefore the Court declines to find that the PLB exceeded its jurisdiction.

Amtrak also relies upon various awards by the National Railroad Adjustment Board and other

public law boards, in which those boards have stated that a board may not consider evidence and arguments that have not first been presented during the handling of the grievance on the property of the carrier.  However, Amtrak has not cited, nor has the Court found in its own search, any authority which provides that, for the purposes of 45 U.S.C. § 153 First (q), the PLB's jurisdiction is circumscribed by NRAB's and other boards' decisions.  Nor has Amtrak demonstrated that the PLB is bound by its own decisions relative to other claimants.

Accordingly, the Court concludes that the PLB did not exceed its jurisdiction in this case.

## II.   ALLEGED VIOLATION OF THE RAILWAY LABOR ACT

Amtrak's second argument is that the PLB violated the RLA, which requires that prior to arbitration, disputes arising from grievances must "be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes."  45 U.S.C. § 153 First (i).  In other words, "minor disputes must first be handled through the grievance procedures contained in the parties' collective bargaining agreement."  *Newsome v. Northwest Airlines Corp.*, 225 F. Supp. 2d 822, 828 (W.D. Tenn. 2002).  Thus, the "usual manner" of handling such disputes is that manner to which the parties have stipulated by agreement.  An unresolved dispute may then be submitted to arbitration.   Arbitration is the "mandatory, exclusive, and comprehensive system" for resolving minor disputes. *Brotherhood of Locomotive Eng's v. Louisville & N.R.R. Co.*, 373 U.S. 33, 38, 83 S.Ct. 1059, 10 L.Ed.2d 172 (1963). An employee must therefore "at least attempt to use and exhaust the contractual grievance procedure before seeking judicial review of his claim."  *Atkins v. Louisville and Nashville R.R. Co.*, 819 F.2d 644, 649 (6th Cir. 1987) (citing *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965)).

Here, Amtrak contends that while the grievance itself went through the proper channels at

12

Amtrak, the predetermination issue was not handled "in the usual manner" because it was not raised on the property.  This argument fails for essentially the same reason as does Amtrak's argument regarding jurisdiction: Amtrak has failed to demonstrate that, by allegedly failing to raise the prejudgment issue on the property, the UTU violated the parties' contractual grievance procedure when in fact the grievance and all supporting documentation were handled on the property.  Amtrak points to no authority which interprets the RLA to impose any particular set of rules or procedures for the handling of grievances on the property that provide that one must raise each and every argument during that phase of the dispute resolution process.  Rather, that is a matter for the parties to determine by collective bargaining agreement.  Here, Amtrak has not pointed to any term of any agreement of the parties which has been violated, leaving the Court to conclude that the dispute was handled in the usual manner per the parties' agreement, and that the PLB did not violate the RLA. Accordingly, the Court concludes that Amtrak's motion for summary judgment should be denied.

**IT IS THEREFORE ORDERED** that *Petitioner's Motion for Summary Judgment* [Doc. No. 12] is **GRANTED**, *Amtrak's Motion for Summary Judgment* [Doc. No. 22] is **DENIED**, and the award to Janis Gunter by Public Law Board No. 6478 is affirmed.


**UNITED STATES DISTRICT JUDGE**